894 F.2d 403
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Philocles JOFFRE, Defendant-Appellant.
 No. 89-5521.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Sept. 29, 1989.
Decided: Dec. 14, 1989.
 
 David H. Sanders; Sanders & Speaker, on brief, for appellant.
 William A. Kolibash, United States Attorney; Thomas O. Mucklow, Assistant United States Attorney; Lisa A. Grimes, Assistant United States Attorney, on brief, for appellees.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Philocles Joffre appeals his conviction on one count of possession with intent to distribute approximately 107.2 grams of cocaine. Specifically, he claims that the trial court erred in allowing evidence obtained from an allegedly illegal search and seizure of his luggage to be introduced at trial. Because we find that the evidence was legally obtained, we affirm Joffre's conviction.
 
 I.
 
 2
 On May 14, 1987, a Federal Grand Jury for the Northern District of West Virginia indicted defendant-appellant Philocles Joffre on one count of possession with intent to distribute cocaine, a Schedule II narcotic drug-controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Before his trial on November 26, 1988, Joffre filed a Motion to Suppress the evidence seized from his luggage on February 20, 1987. The trial court denied Joffre's motion, but gave him leave to revisit the issue. The suppression issue was again brought before the trial judge after Joffre's conviction and prior to his sentencing. At the sentencing hearing, the district court again denied Joffre's motion.
 
 II.
 
 3
 The facts of this case are relatively brief. On February 17th or 18th, 1987, a travel agent in Hagerstown, Maryland contacted the Maryland State Police about a train ticket issued to a black couple. The travel agent became suspicious about the transaction because the return portion of the round-trip between Martinsburg, West Virginia, and Winter Haven, Florida, a 20 hour train ride each way, was to occur 10 hours after the passenger had arrived in Florida. In addition, her suspicion was aroused because the ticket had been purchased with cash.
 
 
 4
 The Maryland State Police contacted the West Virginia State Police who then enlisted the aid of the Martinsburg Police Department. They were advised that an individual named Bitus, possibly a black male of Caribbean descent, would be departing from Martinsburg for Florida at 12:00 noon on February 18, 1987, and returning on February 20, 1987.
 
 
 5
 Detective Sergeant Hayes of the Martinsburg Police Department went to the Amtrak station on February 18, 1987. He observed a black male with a Carribean accent board the train for Florida. He also noticed that the individual, later known to be Joffre, was carrying a gym bag which appeared to be empty. The only other person to board the Florida train was an elderly white male.
 
 
 6
 On February 20, 1987, Hayes returned with West Virginia State Police Sergeant Gary Griffith and five other law enforcement officers, including a dog handler and a trained dog, to the train station prior to the anticipated arrival of the Florida train. Only Hayes and Griffith went to the station itself; the others remained a block away. Hayes identified Joffre as he got off the train, noting that Joffre was wearing the same clothes and carrying the same bag which was now bulging with its contents.
 
 
 7
 Hayes and Griffith approached Joffre, and Hayes touched his arm. Both officers identified themselves, and Joffre became excited and his eyes became large. Hayes told Joffre that they wanted to speak with him and asked if he would accompany them into the train station, which he did. On the way to the station, Hayes took the gym bag from Joffre, unsure of whether it contained a weapon. Inside the station, Hayes placed the bag on a bench in front of Joffre. Upon Griffith's inquiry, Joffre stated his name and made known he had no identification. He was advised that he was suspected of transporting cocaine and that he was being investigated and that a dog would be called to sniff his bag for drugs. Joffre became more excited and agitated.
 
 
 8
 The dog indicated that there were drugs in the bag. Upon seeing this, Joffre indicated that if the dog were removed, he would identify the illicit contents of the bag. Griffith twice asked Joffre if he understood he was consenting to the search of his bag. Joffre answered affirmatively, and then retrieved five packets of crack cocaine (approx. 107.2 grams) from the lining of a jacket contained in the bag. The entire investigation from the moment Joffre was approached to the discovery of the cocaine took four minutes or less.
 
 III.
 
 9
 On appeal, Joffre argues that his detention and the subsequent search of his luggage exceeded the limits of Terry v. Ohio and its progeny. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, appellant contends that the trial court erred in relying on United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).
 
 
 10
 As a preliminary matter, when a district court engages in a factual determination in resolving a dispute over the nature of an encounter between police and citizens in the context of a suppression hearing, the court's decision must stand unless it is found clearly erroneous. United States v. Porter, 738 F.2d 622, 625 (4th Cir. en banc), cert. denied, 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984).
 
 
 11
 In this case, appellant's argument is without merit. The trial court properly relied on U.S. v. Place. In that case, the United States Supreme Court recognized "the reasonableness under the Fourth Amendment of warrantless seizures of personal luggage from the custody of the owner on the basis of less than probable cause, for the purpose of pursuing a limited course of investigation, short of opening the luggage, that would quickly confirm or dispel the authorities' suspicion." Id. at 702. The Court applied the principles of Terry v. Ohio to permit such seizures on the basis of reasonable, articulable suspicion that the luggage contains contraband or evidence of a crime. Id.
 
 
 12
 The United States Court of Appeals for the Fourth Circuit in U.S. v. Alpert, has also determined that " 'when an officer's observations lead him reasonably to believe that a traveler is carrying narcotics, the principles of Terry and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion,' " provided that the investigative detention is properly limited in scope. 816 F.2d 958 (4th Cir.1987), quoting Place, 462 U.S. at 706. The facts of this case establish that the officers had the reasonable, articulable suspicion necessary to justify a Terry-stop. Here the defendant met the drug courier profile; in addition, there were other facts and circumstances which contributed to the officers' reasonable suspicion.[1]
 
 
 13
 The Supreme Court has stressed that in evaluating the validity of a stop, courts must consider the "totality of the circumstances" of the detention. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Most recently, in a case decided since the lower court's decision, the Supreme Court has held that a court, sitting to determine the existence of reasonable suspicion "must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance." United States v. Sokolow, 57 U.S.L.W. 4401, 104 L.Ed.2d 1 (1989). The clear import of the Supreme Court's language is that reasonable suspicion may consist alone of those factors which comprise a drug courier profile. The establishment of reasonable suspicion in a particular case would thus depend on the strength of those factors, individually and in combination, regardless of whether they shape the profile of a drug courier.[2]
 
 
 14
 Sokolow and Alpert are thus particularly noteworthy cases, not only because of their applicable statements of the law, but also because of their analogous factual circumstances. In Sokolow, many of the factors which comprised the defendants drug courier profile were similar to those in the case currently before us. For instance, in that case the defendant, at Honolulu Airport, had gone to an airline ticket counter where he purchased two round-trip tickets for a flight to Miami, Florida. The tickets were purchased with cash taken from a large roll of $20 bills. The passenger traveled under a name that did not match the name under which his telephone number was listed. Furthermore, the passenger stayed in Miami for only 48 hours, even though the round-trip between Honolulu and Miami takes 20 hours. And finally, the passenger appeared nervous during his trip. The Supreme Court found that the factors which comprised the drug courier profile were sufficient to establish reasonable suspicion.
 
 
 15
 Similarly, in Alpert, the Fourth Circuit held that police officers had sufficient justification to stop an airline passenger whose pupils were dilated, who had three one-way tickets from Miami to New York, paid for in cash, and who became nervous when addressed. Alpert, 816 F.2d at 961.
 
 
 16
 In the instant case, defendant met the "drug courier profile," and there were other circumstances which justified the officer's reasonable suspicion. Besides the evidentiary significance of the factors which constituted the profile--a 40 hour round trip to Florida within a 50 hour period, an empty bag at departure, a full bag on arrival, Joffre's nervousness when addressed--the other circumstances included the officers' experience with drug cases involving Haitian and Jamaican drug couriers. From examining the totality of the circumstances, it appears to us there was reasonable suspicion.
 
 
 17
 The additional restrictions imposed on a Terry-stop, and hence, a Place-stop, are that the stop must be reasonably related in scope to the circumstances which justified the initial intrusion, and the nature and the extent of the investigative detention must be minimally intrusive. Place, 462 U.S. at 703. Thus, once there is reasonable suspicion, the inquiry focuses on whether the investigative seizure of either person or personal effects is properly limited.
 
 
 18
 In Place, the Supreme Court found that a "canine sniff" by a well-trained narcotics detection dog is a minimally intrusive investigative technique: It does not require opening the luggage; nor does it expose noncontraband items that otherwise would remain hidden from public view. It is also a limited disclosure which ensures that the owner of the property is not subjected to the embarassment and inconvenience of more intrusive methods. Therefore, the exposure of defendant's luggage, which was located in a public place, to a trained canine's sniff did not constitute a "search" within the meaning of the Fourth Amendment.
 
 
 19
 And finally, another important factor mitigating the intrusiveness of the search of Joffre's bag was his consent. After the trained canine indicated the possible existence of drugs, Joffre's consent minimized, if not eliminated, the potential intrusiveness of the police search. Thus, in addition to having probable cause to search Joffre's bag, the police officers had Joffre's consent.
 
 
 20
 Another relevant consideration is the duration and nature of the detention. The applicable requirements of brevity for investigatory seizures are the same for seizures of luggage as they are for seizures of persons. Unlike the defendant in Place who was detained for 90 minutes, here the stop of the defendant and his luggage was brief (4 minutes), and in a more remote area which protected him from embarrassment and facilitated the safety of the general public. The officers, having a trained dog with them, thereby minimized the intrusion on defendant's Fourth Amendment interests. Place, 462 U.S. at 709-710 (the Court noted that the officers had ample time to arrange for their additional investigation at the location, and could have avoided the lengthy detention of the defendant).
 
 
 21
 Under the circumstances of this case, the detention of appellant's luggage was reasonable under the Fourth Amendment. Furthermore, once the narcotics detection dog indicated the possible existence of drugs within the bag, the officers had probable cause to search the bag, and upon the finding of drugs, to arrest the suspect. Consequently, the evidence obtained from the subsequent search of his luggage was admissible and Joffre's conviction must stand. The decision of the District Court is accordingly
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Before the recent Supreme Court decision United States v. Sokolow, 57 U.S.L.W. 4401, 104 L.Ed.2d 1 (1989), we had held that while elements of the drug courier profile may not always, standing alone, provide reasonable suspicion, they may in only slightly altered circumstances. Alpert, 816 F.2d at 961. In accordance with Sokolow, we now focus on the evidentiary significance of the factors which comprise the profile and the relevance of those factors to the totality of the circumstances
 
 
 [2]
 It does not appear to us that the Supreme Court has suggested that the existence of a drug courier profile is always sufficient to establish reasonable suspicion. On the contrary, the focus of the Court is on the evidentiary strength of the factors that comprise that profile and on the totality of the circumstances. The Court explicitly cautioned against relying on superficial characterizations of evidence, whether they be "drug courier profile," "ongoing criminal activity," or "probabilistic facts." Sokolow, 104 L.Ed.2d at 10